**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERTA DAVIS, as Assignee of KEVIN DAVIS, Assignor, | ) ) ) | No. 25 CV 1924 |
| Plaintiff, | ) ) ) | Magistrate Judge Young B. Kim |
| v. | ) ) | |
| THE TRAVELERS COMPANIES, INC. d/b/a TRAVCO INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | March 20, 2026 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Alberta Davis ("Alberta") sues Defendant Travelers Companies, Inc., d/b/a TravCo Insurance Company ("TravCo"), for insurance coverage in connection with a $750,000 default judgment entered in her favor in a premises-liability lawsuit she filed against Kevin Davis ("Kevin"). Alberta alleges that TravCo must pay her the full judgment amount because it breached its obligation to defend Kevin in the underlying action. Before the court is TravCo's motion for judgment on the pleadings that TravCo owes no coverage to Kevin or Alberta. For the following reasons, the motion is denied:

**Background**

Though Kevin and his wife Alberta had once shared the residence located at 1607 Jones Street in Joliet, Illinois ("1607 Jones"), they separated and Alberta moved out several years before February 17, 2021. (R. 18, Am. Compl. ("Compl.") ¶¶ 6-7.) After their separation, Alberta moved to 2200 Oneida Street in Joliet, Illinois, while

Kevin remained at 1607 Jones. (Id. ¶¶ 2, 8.) On February 17, 2021, Alberta fell and sustained injuries while visiting Kevin at 1607 Jones. (Id. ¶ 9.)

At the time of Alberta's injuries, Kevin held a Homeowners Renters Insurance Policy issued by TravCo effective January 13, 2021, through January 13, 2022, and with a liability limit of $100,000 (the "Policy"). (Id. at ¶ 3.) The Policy includes the following relevant definitions:

- the "Named Insured" are both "KEVIN DAVIS" and "ALBERTA DAVIS" and their mailing address is 1607 Jones

- "you and your" as used in the Policy are the "named 'insured' shown in the Declarations," and "[t]he spouse if a resident of the same household"

- "Insured" are "[y]ou and residents of your household who are [y]our relatives"

- the "residence premises" is "the one family unit or dwelling where you reside"

(R. 24, TravCo's Mem. Mot. J. Pleadings ("Mot."), Ex. D, Policy at 6, 12, 13, 15.)

Per the Policy, "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies," TravCo is to "[p]rovide a defense at [its] expense by counsel of [its] choice, even if the suit is groundless, false or fraudulent." (Id., Ex. D at 32.) But TravCo reserved the right to "investigate and settle any claim or suit" as appropriate, (id.), and the Policy explicitly states that coverage "does not apply to . . . '[b]odily injury' to you or an 'insured' as defined in Definition 9.a. or b," (id., Ex. D at 38 (the "Household Exclusion")). The Household Exclusion also excludes "any claim made or suit brought against you or an 'insured' to [r]epay; or [s]hare damages with;

2

another person who may be obligated to pay damages because of 'bodily injury' to an 'insured.'" (Id.)

The Policy also imposed several conditions on the Named Insureds, including:

- the insured's "Duty to Cooperate and Inform," which states that the coverage provided is "based on information you have given us," and that the insured "agree[s]: [t]o cooperate with us in determining if this information is correct and complete; [and t]o inform us of any change in title, use or occupancy of the 'residence premises'"

- the insured's "Duty to Report Changes in Exposure," where the insured agrees that "[y]ou or an 'insured' must notify us when . . . [a] named 'insured' no longer resides on the 'residence premises,'" or when "[a] named 'insured' acquires a replacement or additional residential property'"

(Id., Ex. D at 12, 15.)

Alberta says in her complaint before this court that Kevin invited her to 1607 Jones on February 17, 2021. (R. 18, Am. Compl. ¶ 9; see also R. 24, Mot., Ex. A, Compl. ("State Compl.") ¶¶ 1-4.) While there Alberta fell down the basement stairs on a plastic covering Kevin had improperly installed and suffered severe bodily injuries as a result. (R. 24, Mot., Ex. A, State Compl. ¶¶ 5-7.) In February or March 2021, TravCo was made aware that Alberta was considering making a claim against the Policy. (R. 18, Am. Compl. ¶ 13.) Shortly thereafter, on March 12, 2021, TravCo notified Alberta that the Policy does not cover her injury claim because she was a Named Insured on the Policy. (Id.) The following year, on February 10, 2022, Alberta forwarded a notice of attorney's lien to TravCo, but TravCo responded that the insurance claim remained closed, attaching its March 2021 coverage denial letter. (Id. ¶¶ 15, 16).

3

Alberta alleges in this coverage action that despite receiving notice of her lawsuit, TravCo did not forward a reservation of rights letter to Kevin or file a declaratory judgment action seeking a formal finding that the Policy did not cover her injury claim. (Id. ¶ 18.) She also alleges that TravCo failed to investigate Alberta's marital or residence status at the time of her injuries or at any time prior to the Policy's renewal, (id. ¶ 19), which TravCo denies, (R. 19, Ans. ¶ 19).

On July 27, 2022, 17 months after her fall, Alberta filed a negligence action against Kevin in state court (the "Underlying Complaint" or the "Underlying Lawsuit"). (R. 18, Am. Compl. ¶¶ 21-22; see also R. 24, Mot., Ex. A.) She alleged in the Underlying Complaint that she "had been living in public housing offered and controlled by the Housing Authority of Joliet," (R. 24, Mot., Ex. A ¶ 2), and that on February 17, 2021, she "was [Kevin's] invitee" at 1607 Jones, (id. ¶ 4). She did not include any allegations in the Underlying Complaint about: (1) having lived at 1607 Jones; (2) her relationship to Kevin; or (3) the Policy.

TravCo was made aware of the Underlying Lawsuit but refused to defend Kevin even after Alberta notified TravCo that she intended to move for entry of a default judgment against Kevin if he failed to appear or answer the Underlying Complaint. (Id. ¶¶ 23-33.) Alberta eventually secured a default judgment against Kevin in the amount of $750,000. (Id. ¶¶ 33-36, 40-47.)

Kevin then filed a lawsuit in state court in January 2025 against TravCo for breach of duty to defend, breach of duty to indemnify, estoppel, and fees and sanctions under 215 Ill. Comp. Stat. 5/155 (the "Coverage Lawsuit"). (See generally R. 1, Notice

of Removal, Ex. 1, Compl.). TravCo removed the Coverage Lawsuit to federal court, and the parties consented to this court's jurisdiction. (See id.; R. 11, Jt. Initial Status Rep.) Kevin then assigned to Alberta "all his rights and interest in any and all claims and actions arising from" the Coverage Lawsuit in exchange for Alberta agreeing to "forever forego any attempts to collect any portion of the Judgment" from Kevin for the Underlying Lawsuit, and Alberta filed her Amended Complaint reflecting that she was the proper Plaintiff. (R. 16, Agreed Mot. to Amend Compl., Ex. B, Assignment Agreement; R. 18, Am. Compl.)

The Amended Complaint includes details that do not appear in the Underlying Complaint. For example, the Amended Complaint includes allegations regarding Alberta's marriage to Kevin, (R. 18, Am. Compl. ¶¶ 6-7), Alberta's past residence at 1607 Jones, (id. ¶ 7), and the Policy, (id. ¶¶ 1-5). When answering the Amended Complaint, TravCo denied that: (1) Alberta had moved out of 1607 Jones before February 17, 2021; (2) it did not investigate the accident before denying coverage; (3) it owed or breached duties to defend or indemnify Kevin; (4) it is estopped from raising coverage defenses; and (5) it violated Section 155. (R. 19, Ans. ¶¶ 7, 14, 19-20, 53-63, 64; R. 24, Mot. at 4.) TravCo then filed the instant motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). TravCo focuses largely on defeating Alberta's duty to defend claim because a judgment in its favor on that claim forecloses the other claims.

**Analysis**

Under Rule 12(c) the standard of review this court must follow is the same as that for ruling on a Rule 12(b)(6) motion. For Alberta to survive TravCo's motion for judgment on the pleadings, her "complaint must state a claim to relief that is plausible on its face." *Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020) (quoting *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (quotations omitted)). When assessing the facial plausibility of a claim, the court must "view the facts in the complaint in the light most favorable to the nonmoving party and [may] grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support [her] claim for relief." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citation and quotations omitted).

The parties agree that Illinois law applies to the question of whether TravCo owed a duty to defend Kevin in the Underlying Lawsuit. The Illinois Supreme Court "has long held that an insurer's duty to defend an action brought against the insured is 'determined solely by reference to the allegations of the complaint.'" *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 674 (Ill. App. Ct. 2012) (quoting *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018 (Ill. 2010)). This is known as the "eight corners" rule where the court "compares the four corners of the underlying complaint with the four corners of the applicable insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage." *Id.* If they do, the insurer has a duty to defend the insured. *Wilson*, 930 N.E.2d at 1017.

6

The "threshold for pleading duty to defend is minimal," and the standard for assessing whether a claim potentially falls within coverage is low. *W. Bend Mut. Ins. Co. v. Sundance Homes, Inc.*, 606 N.E.2d 326, 328 (Ill. App. Ct. 1992). Even where "the insurer may not ultimately be obligated to indemnify" the insured, if the underlying complaint's allegations "give[] rise to the possibility of a recovery under the policy, the insurer's duty to defend is called into play." *Id.* at 327; *see also Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005) (noting that Illinois law only requires that the "underlying complaint allege[] facts within or potentially within policy coverage"). Moreover, when evaluating whether the claims may be covered, "[t]he allegations in the underlying complaint must be liberally construed in favor of the insured." *Midwest Sporting Goods*, 828 N.E.2d at 1098.

Under Illinois law, "[a]n insurer can refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage." *Ill. Union Ins. Co. v. Medline Indus., Inc.*, 220 N.E.3d 380, 387 (Ill. App. Ct. 2022); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992) ("[r]efusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage"). But the underlying complaint must still "allege facts to support the elements of [the plaintiff's] theory" of liability and the court will "not read into the complaint facts that are not there." *Pekin Ins. Co. v. Roszak/ADC, LLC*, 931 N.E.2d 799, 806 (Ill. App. Ct. 2010).

When ruling on a motion attacking the sufficiency of the pleadings, in addition to the allegations set forth in the complaint itself, the court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). As such, the court here considers the Underlying Complaint and the Policy in determining whether TravCo could reasonably conclude the Policy's coverage would not cover the injury alleged in the Underlying Lawsuit.

Alberta claims in this Coverage Lawsuit that because TravCo breached its duty to defend Kevin in the Underlying Lawsuit, it is now obligated to pay the full amount of the judgment Kevin owes her. She argues that her Underlying Complaint raised the potential for coverage such that TravCo had an obligation to defend Kevin. (R. 25, Pl.'s Opp. at 7.) TravCo counters that it did not have any duty to defend Kevin because the Policy unambiguously excluded coverage for any bodily injury to Alberta. (See generally R. 24, Mot.)

TravCo's argument in the present motion is straightforward—the Policy names "Alberta Davis" as a Named Insured and because Alberta is a Named Insured, the Household Exclusion prevents her from recovering for bodily injuries. (See R. 24, Mot. at 6-9.) To the extent Alberta contends she should not have remained a Named Insured after she separated from Kevin and moved out of 1607 Jones, TravCo argues otherwise, pointing to the Policy's "Duty to Cooperate and Inform," which requires the Named Insured to "inform [TravCo] of any change in title, use or occupant of the

8

'residence premises.'" (R. 30, TravCo's Reply at 4-5 (citing R. 24, Mot., Ex. A, Policy at 15).) Alberta counters that "if [TravCo] believed it did not owe coverage for the loss it had a duty to (1) defend the matter under a reservation of rights and/or (2) file a declaratory action seeking a formal declaration that coverage did not exist for the loss." (R. 18, Am. Compl. ¶ 56.) As it stands, she says there "was no information within the 'four corners' of the [Underlying C]omplaint filed against [Kevin] wherein [TravCo] could reasonably conclude there was definitively no coverage for the loss and thereby take absolutely no action whatsoever to defend" him. (Id. ¶ 54.)

Alberta is generally correct that under Illinois law an insurer that believes an insured is not covered under a policy "cannot simply refuse to defend the insured." *A-1 Roofing Co. v. Navigators Ins. Co.*, 958 N.E.2d 695, 700 (Ill. App. Ct. 2011) (citing *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1134 (Ill. 1999)). Instead, the insurer must either defend the underlying lawsuit under a reservation of rights or seek a timely declaratory judgment to determine whether there is coverage. *Ehlco*, 708 N.E.2d at 1134-35. An insurer that fails to take either step and refuses to defend does so "at [its] own peril," *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 335 (Ill. 1991), because if the insurer is later found to have wrongfully refused to defend, it is estopped from raising policy defenses to coverage, *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.,* 853 F.3d 876, 892 (7th Cir. 2017) (observing that an "insurer that breaches its duty to defend and abandons its insured is estopped from later invoking policy defenses to indemnity").

9

To support her argument that there "was no information within the 'four corners'" of the Underlying Complaint that would have allowed TravCo to refuse to defend Kevin, (R. 18, Am. Compl. ¶ 54), Alberta points to "material questions of fact" about whether the Household Exclusion could apply to the Underlying Lawsuit such that a duty to defend Kevin existed, (R. 25, Opp. at 2). First, Alberta argues that the issue of how she "became a 'Named Insured' on the [Policy] . . . is a question of fact which should have been resolved in Trav[C]o's defense of the [underlying] claim under a reservation of rights." (R. 25, Opp. at 4.) But the only basis TravCo provides for why it had no duty to defend Kevin was that Alberta was a Named Insured on the Policy. So, the question of how or why Alberta was a Named Insured in the first place is irrelevant to assessing whether the Underlying Complaint "allege[d] facts within or potentially within policy coverage." *Pekin Ins. Co. v. Pulte Home Corp.*, 935 N.E.2d 1058, 1061 (Ill. App. 2010).

Second, Alberta says her allegation in the Underlying Complaint about living in public housing "begs the question of when that residency began and whether she had an insurable interest" in 1607 Jones. (R. 25, Opp. at 4.) According to Alberta, this question is critical because an "insurable interest at the time of the loss is essential to the validity of the policy," and the Household Exclusion "applies solely to the insured and residents of the household who are relatives." (Id. (citing *Whitten v. Cincinnati Ins. Co.,* 544 N.E.2d 1169, 1173 (Ill. App. Ct. 1989)).) The court disagrees. As TravCo points out, even if she did not want it, Alberta had an insurable interest in the property. She was "covered by the policy and . . . protected [from] potential tort

10

liability to third persons who may be injured on the premises." (R. 30, Reply at 5.) And in any event, Alberta's argument that the Household Exclusion cannot apply to her because she was not a "resident" of 1607 Jones at the time of her injuries is incorrect. Whether a duty to defend existed hinges on whether TravCo knew that Alberta—the plaintiff in the Underlying Lawsuit—was a Named Insured, not whether she was a resident of 1607 Jones. The Household Exclusion specifies that liability coverage "does not apply to . . . '[b]odily injury' to you or an 'insured' . . . ." (R. 24, Mot., Ex. D, Policy at 38.) The "[i]nsured"—to which liability coverage does not apply—is "[y]ou and residents of your household who are [y]our relatives," (R. 24, Mot., Ex. D, Policy at 13), and "[y]ou" includes the "named 'insured' shown in the Declarations." (Id., Ex. D at 12.) TravCo's argument is that the exclusion applies because Alberta is a Named Insured in the declarations, resident or not.

Lastly, Alberta argues that there was "no information within the 'four corners'" of the Underlying Complaint from which TravCo could "reasonably conclude" (R. 18, Am. Compl. ¶ 54), that she "was the same Alberta Davis listed on the [P]olicy" and not "a cousin, friend or stranger" who "simply had the same name," (R. 25, Opp. at 6-7). Alberta points out that the Underlying Complaint did not identify her "as the spouse, or other family member, of [Kevin] that resided at [1607 Jones] such that Trav[C]o could conclude" she was a Named Insured. (R. 25, Opp. at 6-7.) As such, when it refused to defend Kevin, TravCo assumed a material fact and made its "own unilateral and extrajudicial determination on the application" of the Household

11

Exclusion and improperly "abandoned" Kevin, leading to the default judgment. (Id. at 7.)

TravCo responds that the "allegations in the [Underlying Complaint] must be read in the factual context" of that case, which includes the fact that "Alberta Davis" was both the named plaintiff in the Underlying Complaint and one of the Named Insureds along with Kevin, who resided at the same address where Alberta sustained injuries. (R. 30, Reply at 7.) TravCo asserts that while the duty to defend is generally broad, it does not extend to every "metaphysical possibility" giving rise to coverage. (Id. (citing *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1091 (7th Cir. 2000)).)

TravCo's argument makes some intuitive sense, and—based on the Amended Complaint—it guessed right. In the Amended Complaint, Alberta admits she is the same Alberta listed as one of the Named Insureds on the Policy. Unlike the Underlying Complaint, the Amended Complaint also includes specific allegations that Alberta used to live at 1607 Jones, is married to but separated from Kevin, and she may have been a proper Named Insured in the Policy in the past. (See, e.g., R. 18, Am. Compl. ¶¶ 3, 6-8, 10-12.) But the court is mindful of both the eight-corners rule and its obligation to view all facts and inferences in the light most favorable to Alberta when ruling on the present motion. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

This case presents a unique factual scenario—a plaintiff argues a duty to defend existed in part because critical information is absent from the underlying complaint. In a handful of loosely analogous cases, the underlying complaint's

12

allegations suggested—but did not specifically allege—circumstances that could give rise to potential liability under a policy. Those courts found that a duty to defend did not exist under Illinois law because "it is the actual complaint, and not a hypothetical version that must be considered when determining whether an insurer's duty to defend was triggered." *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1059 (7th Cir. 2012) (citing *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 812 (7th Cir. 2010)).

For example, in *Microplastics* a buyer countersued the manufacturer of plastic molding components alleging that the manufacturer was liable "for the costs charged to [buyer] associated with the defects" of the components, but it did not specify the nature of the defects in the complaint. 622 F.3d at 811. The manufacturer argued that the use of the word "defects" in the counterclaim was sufficient to trigger the policy's property damage provision and the insurer's duty to defend. *Id*. The court disagreed, reasoning that the counterclaim did not contain any "explicit factual allegations that potentially fall within policy coverage," so the duty to defend was not triggered. *Id.* at 810.

More recently, in *St. Paul Guardian Insurance Company v. Walsh Construction Company*, 99 F.4th 1035, 1038 (7th Cir. 2024), an insurer issued a general liability policy to a subcontractor who fabricated and installed steel columns to support airport terminal façades. The subcontractor welds on the steel columns cracked, calling into question the integrity of the system. *Id*. The contractor thereafter "took preventative measures" to retrofit the columns "before they could

cause damage to the other parts of the . . . system." *Id.* at 1041. The city sued the general contractor for breach of contract and to recover the costs it incurred to investigate and remediate the defective welds. *Id.* at 1038. The general contractor then tendered its defense to the subcontractor's insurer, who in turn brought a declaratory judgment action to confirm whether its policy applied. *Id.* at 1037. The court found the insurer had no duty to defend under Illinois law, explaining that the physical damage specifically alleged in the underlying complaint was limited to the subcontractor's defective welds. *Id.* at 1043-44. The court reasoned that while those welds "may [have] create[d] the potential for future damage to the property of others," the underlying complaint alleged only that the contractor's repairs were "preventative costs" which were "not recoverable" under the policy and did not trigger the duty to defend. *Id.* at 1041, 1044.

The dissenting opinion in *Walsh* is worth mentioning. In finding a duty to defend, the dissent reasoned that it was "easy to imagine" based on the underlying complaint that the defective welds may have damaged the façade system, pointing to Illinois law's focus on "whether there is potential for coverage, not whether that potential is plausibly alleged or described with particularity in the underlying complaint." *Id.* at 1046 (Scudder, J., concurring in part and dissenting in part) (noting that the underlying complaint "was silent on the *effect* those defects had, or did not have, on the [ ] broader [ ] structure. That silence has legal consequence under Illinois law given the inferences that otherwise flow from the City's complaint." (emphasis in original)). The *Walsh* majority responded that "the notion that 'silence'

14

can somehow trigger the duty to defend cuts against the fact that the potential for covered damages must be found somewhere in the four corners of the complaint." *Id.* at 1044 n.3 (citing *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579-80 (7th Cir. 2021)). The majority added that a "rule that would impose a duty to defend unless the underlying complaint affirmatively disavows any and all hypothetical damage to the property of others is not only unrealistic (why would a plaintiff ever do that?), but boundless." *Id.*

But courts have found a duty to defend when an underlying complaint includes allegations that could either give rise to or exclude coverage. For example, in *Chandler v. Doherty*, 702 N.E.2d 634, 636 (Ill. App. Ct. 1998), the plaintiff alleged the defendant injured them in a car accident. The defendant owned two cars, but only one was insured, and the complaint did not specify which car the defendant was driving at the time of the accident. *Id.* The court found there was a potential for coverage and therefore a duty to defend because the complaint did not exclude the possibility that the defendant was driving the insured car at the time. *Id.* at 638; *see also, e.g.*, *Sims v. Nat'l. Cas. Co.,* 193 N.E.2d 123, 124, 127 (Ill. App. Ct. 1963) (holding that coverage was not precluded where plaintiff in underlying litigation did not allege whether defendant was engaged in his employment at the time of the accident, because it was equally as likely that the plaintiff was acting as an employee, triggering the duty to defend).

Like the plaintiffs in *Chandler* and *Sims*, Alberta pled specific facts in the Underlying Complaint that when construed in Kevin's favor trigger coverage.

15

Importantly, unlike in *Walsh* and *Microplastics*, the Policy ordinarily covers bodily injury as Alberta alleged in the Underlying Complaint against Kevin. The only question at the time of the Underlying Lawsuit was whether the Household Exclusion applied.[1] And apparently considering the "factual context" in which the Underlying Lawsuit was brought, TravCo determined that the Household Exclusion did apply because Alberta's name matched the Named Insured on the Policy. (R. 30, Reply at 7.) Put another way, despite the allegations in the Underlying Complaint that Alberta did not live at 1607 Jones and the absence of allegations connecting Alberta to Kevin or the Policy, TravCo nonetheless assumed that the Alberta who sued Kevin is the same Alberta identified in the Policy as a Named Insured.

TravCo argues that Alberta improperly "asks the Court to disregard the context in which the [Policy] was issued" when assessing the viability of her amended complaint. (R. 30, Reply at 7.) But asking a court to consider that "context" flouts the "eight corners" rule the court must follow. To be sure, in *Clemmons v. Travelers Insurance Company*, 430 N.E.2d 1104, 1107-08 (Ill. 1981), the Illinois Supreme Court held that an insurer improperly refused to defend the named defendant when it relied

---

[1] It bears mentioning that the plaintiff insurance companies in *Walsh* and *Microplastics* sought declaratory judgments. Once filed, the insured bears the initial burden of showing policy coverage. *St. Michael's Orthodox Cath. Church v. Preferred Risk Mut. Ins. Co.*, 496 N.E.2d 1176, 1178 (Ill. App. Ct. 1986). If the insured meets this burden, the burden shifts to the insurer to prove that a policy exclusion applies. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (applying Illinois law). If an exclusion applies, the burden then shifts back to the insured to show that an exception to the exclusion applies. *Id.* This stands in contrast to this case, where TravCo refused Kevin's defense but failed to file a declaratory judgment action.

on facts that were not alleged in the underlying complaint. In that case, a lawsuit was brought against an individual who was driving his employer's car when he struck another driver. *Id.* During the insurer's investigation, the employee driver provided the insurer with an unsworn accident report stating that he was driving the company car outside business hours. *Id.* at 1108. The insurer thus refused to defend the employee driver because he was not a permissive user of the car at the time of the accident. *Id.* at 1107-08. The plaintiff in *Clemmons* ultimately secured a default judgment and then sued the insurer to collect the judgment, arguing that the insurer breached its duty to defend the employee driver. *Id.* at 1106. The court found that the underlying lawsuit against the driver triggered the insurer's duty to defend because allegations in the underlying complaint did not foreclose the possibility that the employee had permission to drive the car at the time for coverage purposes. *Id.* at 1107-08. Moreover, the court barred the insurer from relying on the accident report to deny coverage, stating that "the duty to defend must be determined solely from the language of the complaint and the policy." *Id.* at 1108.

In a similar vein, the Illinois Supreme Court refused to allow an insurer to rely on a definition in an Illinois statute—which was the basis of one of the statutory claims in the underlying complaint—to interpret the word "negligence" in an exclusionary phrase in a relevant policy endorsement. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042-43 (Ill. 1994). Again, the court emphasized that the duty to defend "must be determined solely from the allegations of the complaint in the underlying suit." *See id.*

17

Likewise, the "factual context" that TravCo points to here is outside "the language of the complaint and the policy." *Clemmons*, 430 N.E.2d at 1008. And the court cannot say that it is "beyond a doubt" that Alberta failed to provide sufficient facts to support her claims. Moreover, as TravCo notes, under the Policy's "Duty to Cooperate and Inform," the Named Insured agreed to "inform [TravCo] of any change in title, use or occupancy of the 'residence premises,'" (R. 30, Reply at 4-5), and in the Underlying Complaint Alberta expressly alleged she did not live at 1607 Jones, (R. 24, Mot. Ex. A, Davis Compl. ¶ 2). Viewing this allegation in Alberta's favor, the Underlying Complaint did not raise an inference that Alberta is the Alberta identified as one of the Named Insureds. TravCo suggests that Kevin or Alberta breached this "duty to notify TravCo of any change in the exposure the policy covered," (R. 30, Reply at 5), but this argument has no bearing on the duty to defend when the Underlying Complaint was filed against Kevin. As such, TravCo's motion fails.

## Conclusion

For the foregoing reasons, TravCo's motion for judgment on the pleadings is denied.

ENTER:

Young B. Kim
United States Magistrate Judge

18